## COMMONWEALTH *vs.* GAVIN G., a juvenile.

Essex. April 2, 2002. - August 12, 2002.

Present (Sitting at Barnstable): MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Juvenile Court,* Jurisdiction, Probation. *Jurisdiction,* Juvenile Court. *Criminal Records.*

A Juvenile Court judge lacked the authority to expunge the probation record of a juvenile against whom charges had been dismissed for lack of prosecution, in light of a detailed statutory scheme protecting the confidentiality of Juvenile Court proceedings, juvenile records maintained by the court, and juvenile records maintained by the probation department, and in light of a mechanism under G. L. c. 276, § 100B, for sealing the file of anyone having a record of entries of a delinquency court appearance, which rendered other remedies, including expungement, inappropriate. [472-483] IRELAND, J., with whom GREANEY, J., joined, dissenting.

COMPLAINTS received and sworn to in the Essex County Division of the Juvenile Court Department on July 17, 2000.

Entry of judgments of dismissal was ordered by *David A. Lowy,* J., and a motion to expunge the record was heard by *Michael F. Edgerton,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James J. Arguin,* Assistant Attorney General, for the Commonwealth.

*Barbara Kaban* for the juvenile.

*Lisa Thurau-Gray,* for Juvenile Justice Center of Suffolk University Law School, amicus curiae, submitted a brief.

*Andrew Polk,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

SOSMAN, J. The Commissioner of Probation (commissioner) appeals from an order of a judge in the Juvenile Court allowing the juvenile's motion to expunge his police and probation rec-

ords pertaining to charges that were dismissed for lack of prosecution. We conclude that Juvenile Court judges lack the authority to order the expungement of probation records, and therefore reverse the order of expungement with respect to those records.

1. *Background.* On July 17, 2000, the juvenile was arraigned in Juvenile Court on charges of being a disorderly person and participating in an affray. The charges stemmed from a fight that had occurred in Saugus the night before. The juvenile, fifteen years old at the time, contended that he had been attacked from behind while walking alone through a nightclub parking lot, that he was a victim of the crime, and that his arrest as one of the alleged perpetrators was a mistake. The juvenile had no prior record, was an honors student at his high school, was active on school athletic teams, and planned to attend college.

On the scheduled trial date, October 24, 2000, the juvenile appeared in court with two witnesses to corroborate his version that he had been attacked by the actual perpetrators of the affray and arrested by mistake. The juvenile's counsel was also prepared to cross-examine the witnesses who had ostensibly identified the juvenile as one of the perpetrators, and intended to elicit from them that they had never actually made a positive identification of the juvenile. The Commonwealth was not ready for trial. The two security guards from the nightclub, who had witnessed the alleged affray, did not appear for trial, despite having been summonsed. Without those witnesses, the Commonwealth was unable to proceed, so the judge dismissed the cases without prejudice, over the juvenile's objection.[1]

Two weeks after that dismissal, the juvenile filed a motion to expunge, seeking expungement of his "criminal record," including his probation record, concerning the dismissed charges. Counsel for the commissioner filed a notice of appearance in the proceedings, and the commissioner opposed the motion on various grounds, including that the judge lacked the authority to expunge probation records. On December 7, 2000, after a hear-

---

[1]The Commonwealth did not object to the dismissal.

ing, the motion judge[2] ordered the expungement "of the name of this juvenile and any and all accompanying personal data relating to this case and to his arrest maintained in the files of the Saugus Police Department and the Office of the Commissioner of Probation." The order also required the commissioner to "provide notice of such expungement to the appropriate clerk, probation officer and the Department of Youth Services," and ordered "expungement of the name of this juvenile and any and all accompanying personal data relating to this case and his arrest maintained in the files of said clerk, probation officer and Department of Youth Services."

The commissioner filed a notice of appeal,[3] and we transferred the case to this court on our own motion.

2. *Discussion.* The seminal case on the issue of expungement is *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640 (1978) (*Police Comm'r*), in which this court upheld the authority of a Juvenile Court judge to order expungement of police records pertaining to the arrest of a particular juvenile. "[T]wo factors persuaded us that the use of the court's ancillary power to order the expungement of police records was necessary. The first was the unique goals of the juvenile justice system; the second was the lack of a legislative remedy." *Commonwealth* v. *Balboni*, 419 Mass. 42, 45 (1994).

Here, we are again dealing with a Juvenile Court matter, and the "unique goals of the juvenile justice system" remain applicable. *Id.* "[T]he Juvenile Courts have a broad mandate to act in furtherance of a child's welfare," and therefore must have "the power to take the necessary steps to ensure that in proper circumstances the juvenile shall suffer no injury as a result of involvement with the judicial process by the dissemination of records which have in some ways an impact equivalent to criminal records." *Police Comm'r, supra* at 667, 668.

However, the other factor underlying the court's decision in *Police Comm'r, supra,* was equally important, namely, the complete absence of any legislative scheme governing the dis-

---

[2]The motion judge was not the judge who had dismissed the complaints.

[3]The Saugus police department did not appeal from the order, and the propriety of that portion of the expungement order pertaining to the police records is not before us.

semination of the records in question. *Id.* at 653. The court noted that *"none* of the statutes" protecting juvenile records in other agencies extended to records maintained by the police (emphasis added). *Id.* In making that observation concerning the absence of any legislative or regulatory scheme governing a juvenile's police records, the court distinguished statutes that explicitly protected juvenile probation records. *Id.* at 652-653 (discussing protections supplied by G. L. c. 276, §§ 100A and 100B, but noting that those statutes did not extend to "records not maintained by either the court or probation department"). Implicit in that distinction is the conclusion that, where such statutory or regulatory protections do exist, a Juvenile Court judge has no inherent authority to order expungement of the records.

Unlike police records, a detailed statutory scheme protects the confidentiality of Juvenile Court proceedings, juvenile records maintained by the court, and juvenile records maintained by the probation department. Juvenile proceedings are not accessible to the public. G. L. c. 119, § 65. Nor does the public have access to court records in a juvenile delinquency case. G. L. c. 119, § 60A. "[A]ny records in cases arising against any child" may not be admitted in evidence or used against the child except in specified circumstances (subsequent delinquency or criminal proceedings against the same juvenile, or for purposes of impeachment in subsequent delinquency or criminal proceedings). G. L. c. 119, § 60.

With specific reference to the records kept by the probation department, all such records (both juvenile and adult) "shall not be regarded as public records and shall not be open for public inspection." G. L. c. 276, § 100. Adult probation records are accessible "to the justices and probation officers of the courts," to police, "and to such departments of the state and local governments as the commissioner may determine." *Id.* The commissioner may also allow "departments of the federal government" and "educational and charitable corporations" access to adult records. *Id.*

However, as to juvenile records maintained by the probation department, persons "other than any law enforcement agency, any court, or any appointing authority" seeking information

from the probation department concerning "court appearances and adjudications in a case of delinquency or the case of a child in need of services" must be told that "no record exists."[4] G. L. c. 276, § 100A. Thus, the only entities that may have access to such juvenile records, or who may even be informed that such records exist, are law enforcement agencies, courts, and appointing authorities.

Then, even though only a limited class of persons may obtain access to juvenile records, the Legislature has provided further protection for certain juveniles. Under G. L. c. 276, § 100B, anyone "having a record of entries of a delinquency court appearance" may request "that the commissioner seal such file."[5] The commissioner "shall comply with such request" if three conditions are met: (1) the "court appearance" or any disposition resulting from the delinquency proceeding terminated at least three years earlier, (2) the person has not been adjudicated delinquent or convicted of a criminal offense within the Commonwealth during the preceding three years, and (3) the person states that he or she has not been adjudicated delinquent or convicted of a criminal offense in any other jurisdiction during the preceding three years. G. L. c. 276, § 100B. If those conditions are met, the request for sealing must be allowed. *Id.* Following the sealing of such records, the record "shall not operate to disqualify a person in any future examination, appointment or application for public service under the government of the commonwealth or of any political subdivision thereof." *Id.* Nor may the sealed records "be admissible in evidence or used in any way in any court proceedings or hearings before any boards of commissioners," except for purposes of "imposing sentence for subsequent offenses in delinquency or criminal proceedings."

[4]Consistent with that obligation on the part of the probation department to respond that "no record exists," the Legislature authorized persons who were previously involved in delinquency proceedings to deny that involvement when asked by prospective employers: "[A]ny applicant for employment may answer 'no record' with respect to any inquiry relative to prior arrests, court appearances and adjudications in all cases of delinquency or as a child in need of services which did not result in a complaint transferred to the superior court for criminal prosecution." G. L. c. 276, § 100A.

[5]Nothing in the statute provides for sealing in the absence of a request from the juvenile. It is thus entirely the juvenile's choice whether to have the record sealed.

*Id.* See *Commonwealth* v. *Santos*, 376 Mass. 920, 923-926 (1978) (defendant not allowed to impeach complaining witness with sealed juvenile record).

Most importantly, the sealing of the record places further restrictions on disclosure even as to those few persons who are normally allowed access to juvenile records. Specifically, the courts and the police making inquiry about such records may only be told that there is a "sealed delinquency record over three years old." G. L. c. 276, § 100B. Once it has been sealed, the police are no longer allowed to see the record itself. As to the courts, the information in a sealed juvenile record may only be made available "to a judge or probation officer who affirms that such person, whose record has been sealed, has been adjudicated a delinquent or has pleaded guilty or has been found guilty of and is awaiting sentence for a crime committed subsequent to sealing of such record," and "[s]aid information shall be used only for the purpose of consideration in imposing sentence." *Id.*[6] All others making inquiry pertaining to a sealed juvenile record (including inquiries from an "appointing authority" that would normally have access under § 100A) must be told that there is "no record."

These restrictions on access to juvenile records maintained by the probation department were discussed in detail in *Police Comm'r, supra* at 652, and then contrasted with the utter lack of any statutory protection, of any kind, for the records concerning the juvenile that were kept by the police. Its clear import is that these are the precise kinds of statutory protections that, having been enacted by the Legislature, make other remedies (including the remedy of expungement) inappropriate. Indeed, it is for this very reason — the protection of adult records by way of sealing under G. L. c. 276, § 100C — that we have held that judges have no authority to expunge adult records. See *Commonwealth* v. *Balboni*, 419 Mass. 42, 46-47 (1994). See also *Commonwealth* v. *Roberts*, 39 Mass. App. Ct. 355, 357 (1995).

---

[6]Thus, for example, when this court was considering whether denying a defendant the right to impeach the complaining witness with her sealed juvenile record denied that defendant his right of confrontation, neither this court nor defense counsel even knew "the nature of the charge" in that sealed record. *Commonwealth* v. *Santos*, 376 Mass. 920, 922 n.3 (1978).

The juvenile and amici who filed briefs supporting his position[7] contend that the protections for juvenile probation records set forth in these statutes are inadequate and that, despite those protections, the very existence of the record still has the potential to injure him in the future. We need not address the argument, and we express no view as to the alleged pragmatic shortcomings of these statutory provisions. Disagreement over whether a legislative scheme provided sufficient protection to the juvenile's police records was not the basis of the court's decision in *Police Comm'r, supra*. Rather, the court reasoned that it was the complete absence of any such scheme that allowed judges to resort to their inherent authority. *Police Comm'r, supra* at 653. The juvenile cannot, merely by pointing to ostensible holes or inadequacies in the legislative scheme protecting his records, pretend that the Legislature has not provided the protections that it deems appropriate and sufficient. The Legislature has struck its own balance between the juvenile's interest in not being unfairly prejudiced by his record and the needs of courts and law enforcement agencies for information pertaining to juvenile proceedings. Whatever the merits of the view that that balance is unfairly skewed, nothing in *Police Comm'r, supra,* gives Juvenile Court judges the authority to reset that balance on a case-by-case basis. Where the Legislature has determined that a very few limited persons, including judges and probation officers, are entitled in certain circumstances to know that proceedings were brought against a particular juvenile, the juvenile's contention that those limited persons should not have access to that information, that they do not need it, or that they will misuse it, is a contention that should be addressed to the Legislature, not to a Juvenile Court judge.

The juvenile also argues that these statutory protections do not in fact apply to his records and that there is thus an absence of any statutory protection for them within the meaning of *Police Comm'r, supra.* Specifically, he contends that the sealing procedures provided by G. L. c. 276, § 100B, are only available

---

[7]Amicus briefs were submitted by the Youth Advocacy Project of the Committee for Public Counsel Services and the Juvenile Justice Center of Suffolk University Law School.

for juveniles who have been adjudicated delinquent, not to juveniles whose charges have been dismissed. The argument ignores the substantial protections that are provided by the final two paragraphs of G. L. c. 276, § 100A, even in the absence of any sealing of records. Even if we agreed with the juvenile's contention that his record is ineligible for later sealing (a contention that we reject, for the reasons stated below), we would not conclude that there is a complete absence of any statutory scheme protecting the confidentiality of his probation record.

Nor do we interpret § 100B in a manner that would prevent the juvenile from obtaining the remedy of sealing his record in due time. The statute contains no limitation signifying that it applies only to juveniles who were adjudicated delinquent. The opening sentence of § 100B, which describes the persons who may request sealing, provides that such a request may be made by "[a]ny person having a record of entries of a delinquency court *appearance . . .*" (emphasis added).[8] If the Legislature intended this option to be available only to persons who had been adjudicated delinquent, such an intent could easily have been articulated. However, by defining the persons who may request sealing as those who have only a record of "appearance" in a juvenile proceeding, the Legislature has unambiguously provided that the remedy of sealing is available to anyone ever involved in such a proceeding. G. L. c. 276, § 100B.

The juvenile also suggests that this restriction limiting sealing to juveniles who have been adjudicated delinquent should be read into § 100B by comparing it to § 100A and § 100C, which contain provisions for the sealing of adult records. We should of course simply read statutes as they are written. "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *James J. Welch & Co.* v. *Deputy Comm'r of Capital Planning & Operations,* 387 Mass. 662, 666 (1982), quoting *Caminetti* v. *United States,* 242 U.S. 470, 485 (1917). There is no ambiguity in the wording of

---

[8]Similarly, the three-year time period prior to sealing runs from the last "*court appearance* or disposition" (emphasis added). G. L. c. 276, § 100B.

§ 100B that needs to be resolved by analogizing or comparing it to § 100A.

The juvenile's argument is also premised on a misreading of the relationship between § 100A and § 100C. His somewhat tortured construction, by which he seeks to deprive himself of the statutory remedy that has unambiguously been made available to him in § 100B, runs as follows: Because § 100C contains express provisions for immediate sealing of adult records in cases involving acquittal or dismissal of criminal charges,[9] whereas § 100A provides for sealing of adult records after a ten- to fifteen-year waiting period, the juvenile assumes that § 100A applies only to adults who have been convicted, and then assumes that § 100B, with its three-year waiting period, is the juvenile counterpart to the adult sealing provisions of § 100A and therefore sub silentio incorporates the equivalent predicate of a conviction, i.e., an adjudication of delinquency.

The juvenile's argument has, as its fundamental premise, the assumption that § 100A only applies in cases of adult "convictions." There is no such limitation in § 100A. Section 100A applies to persons with "a record of criminal court appearances and dispositions" and does not, by its express terms, contain any reference to adult "convictions."[10] The juvenile, however, points to § 100C, which provides for immediate sealing of adult records if the adult has been acquitted, a no bill is returned by the grand jury, no probable cause is found, the charges are dismissed, or the charges are nol prossed. By implication, he contends, if § 100C applies to all adults whose involvement in the criminal justice system did not result in a conviction, only convicted adults remain in need of the sealing

---

[9]That G. L. c. 276, § 100C, pertains only to records of proceedings against adults, and not to proceedings against juveniles, stems from its reference to "criminal" proceedings. We have long held that delinquency proceedings against juveniles are not "criminal" proceedings. See *Commonwealth* v. *Connor C.*, 432 Mass. 635, 641 (2000); *Department of Youth Servs.* v. *A Juvenile*, 384 Mass. 784, 786 (1981), and cases cited.

[10]That the term "dispositions" does not refer solely to convictions is made clear in the second paragraph of the same section, which specifies that the period of eligibility for sealing will not be interrupted by "subsequently recorded offenses for which the *dispositions* are 'not guilty', 'dismissed for want of prosecution', 'dismissed at request of complainant', 'nol prossed', or 'no bill' " (emphasis added). G. L. c. 276, § 100A, second par.

provisions of § 100A, and § 100A therefore only applies to adults who were convicted.

Contrary to the juvenile's argument, § 100C is not the exclusive remedy for adults whose charges did not result in conviction, such that we should read a requirement of a conviction into § 100A. Under § 100C, an adult who is acquitted after trial, or as to whom the grand jury return a no bill or a court finds no probable cause, is entitled to immediate sealing.[11] However, if the case is nol prossed, or if the criminal charges are dismissed, the court may only order sealing if "it appears to the court that substantial justice would best be served." *Id.* There is no entitlement to sealing for such defendants. Indeed, discretionary sealing under § 100C may not be ordered unless the defendant shows "that the interests of confidentiality and avoiding harm have specific application to him or her." *Commonwealth* v. *Doe*, 420 Mass. 142, 151 (1995). "A reasoned objection at any time by the prosecutor, victim, probation department, police, or the media would pose a very serious obstacle to the petition [for sealing under § 100C]." *Id.* at 152.

Thus, adults whose cases are dismissed or nol prossed and who are unable to meet the stringent requirements of § 100C will not obtain immediate sealing thereunder. However, after the requisite waiting period, those adult defendants who were previously denied sealing under § 100C may still request sealing under § 100A, and, if they meet the conditions set forth therein, they will then be entitled to sealing under that section. There is thus a significant group of defendants who were not convicted, but who could not make the requisite showing under § 100C, who will still be able to seek relief under § 100A. Because § 100A is available to "[a]ny person having a record of criminal court appearances," it extends to persons whose "appearances" did not result in conviction and will be utilized by those persons who were unable to obtain (or who did not seek) immediate relief under § 100C. Sealing under § 100A is not limited to adults with records of conviction, and comparable

[11]Automatic sealing of court records under § 100C was held unconstitutional, as it was not the least restrictive alternative for protecting the interests at stake. *Globe Newspaper Co.* v. *Pokaski*, 868 F.2d 497, 507-510 (1st Cir. 1989).

terminology in § 100B (applicable to anyone with a record of a "delinquency court appearance") is not restricted to juveniles who were "adjudicated delinquent." Section 100B extends, just as the similarly worded adult provisions do, to persons whose cases were dismissed, nol prossed, or otherwise did not result in an adjudication of delinquency.

In the final analysis, there is no rational reason for the Legislature to allow juveniles adjudicated delinquent to have their records sealed but to deny that same remedy to juveniles who were charged but ultimately found not to be delinquent. Nowhere in the juvenile's strained construction of these statutes does he articulate any sensible rationale that would underlie his proposed interpretation. Nor is there any indication that the commissioner would deny this juvenile's request for sealing under § 100B, or that the commissioner has ever denied any juvenile's request for sealing under § 100B, on the ground that the juvenile had not been adjudicated delinquent. To the extent that any ambiguity existed in § 100B, the commissioner's interpretation (to which we would show at least some deference) is one that is beneficial to juveniles. His interpretation accords all juveniles relief under § 100B, without regard to the manner in which their delinquency charges were resolved. That is at least a sensible interpretation of § 100B, and certainly within the commissioner's authority.

The juvenile's interpretation would leave juveniles in his position with expungement as the only possible remedy, ignoring the fact that judges do not (and should not) order expungement in all cases of acquittal or dismissal. See *Police Comm'r*, *supra* at 662 (noting that "if there is a disposition of the case favorable to the juvenile due to matters not necessarily supportive of a finding of noninvolvement in delinquent behavior," expungement might not be appropriate). For example, if charges were dismissed because the contraband found in a juvenile's possession was ordered suppressed, *Police Comm'r*, *supra*, recommends that that juvenile would not be a good candidate for record expungement, and a judge could properly deny the juvenile's motion for expungement. Had there been an adjudication of delinquency, the juvenile could have his record sealed in three years. However, according to this juvenile's argument, the

dismissal of the charges would prevent the sealing of that juvenile's record, leaving such a juvenile with no remedy at all. Nothing in the statute suggests that juveniles whose charges have been dismissed, or who have not been adjudicated delinquent, should be denied the remedy of sealing, and the juvenile's argument that they should be denied that remedy so that they may take their chances with a motion for expungement is an argument that can only be made from the safe vantage point of already having an expungement order in hand. The Legislature's approach, and the straightforward interpretation advanced by the commissioner, allows all juveniles to seal their records after three years, whereas the juvenile's interpretation irrationally leaves some juveniles with neither expungement nor sealing of their records.

The juvenile also suggests that the absence of an immediate sealing remedy for juveniles, in the face of the Legislature's having provided that immediate remedy for adults, is the product of legislative inadvertence leaving a gap that may be filled by an expungement order.[12] We see no evidence of legislative inadvertence. There are many reasons why adults, but not juveniles, need immediate sealing of their records. Most notably, adult criminal proceedings are matters of public record and, absent the immediate sealing of adult records provided by § 100C, an adult who was charged but not convicted would face far greater risk that such records would be disseminated. Under § 100C, an adult who was not convicted may obtain immediate sealing of both the probation records and the court's own otherwise public records pertaining to the case. Juveniles do not need this protection, because all court records pertaining to juvenile proceedings are already maintained as confidential. Furthermore, an adult, despite being acquitted, is not allowed to reply "no record" when a prospective employer inquires about prior arrests or court appearances, but may only do so after the record has been sealed. See G. L. c. 276, §§ 100A, 100C. A

---

[12]The juvenile's argument ignores the obvious. If, through mere inadvertence, the Legislature failed to articulate its intent that innocent juveniles be allowed immediate sealing of their records, the remedy to be provided, consistent with the alleged legislative intent, would be to allow immediate sealing. We would not seize on such inadvertence as the opportunity to create an expungement remedy that the Legislature did not intend.

juvenile, however, may reply "no record" without waiting for sealing. See G. L. c. 276, § 100A. The same distinction pertains to inquiries made of the probation department. For an adult, even though acquitted, the requirement that the commissioner respond to requests with "no record exists" does not apply until the adult record is sealed, whereas the response of "no record exists" is given with respect to all juvenile files, whether or not they have been sealed. See G. L. c. 276, §§ 100A, 100C. Given that juvenile records already enjoy considerable confidentiality in comparison to the public nature of adult criminal records, it is not surprising that the Legislature allowed some adults an avenue for immediate sealing while imposing a waiting period for juveniles. Put simply, the substantial protections that already pertain to all juvenile records, without regard to whether the juvenile was adjudicated delinquent, make sealing of juvenile records less urgent, and a waiting period may be imposed on all juveniles without inflicting on them the harm that would be inflicted on an innocent adult during that same time period. We thus reject the suggestion that the absence of any immediate sealing provisions for juveniles represents an unintended void in the legislative scheme that opens the door to court-created expungement remedies.

Conspicuously absent from that entire legislative scheme governing court and probation records, whether for adults or juveniles, is *any* suggestion that the Legislature intended such records be destroyed. To the contrary, when confronted with a proposal that records of all juvenile proceedings be expunged when the juvenile reached seventeen years of age, the Legislature did not opt to provide that remedy. See 1971 House Doc. No. 4290. Nor, despite that explicit proposal concerning expungement, did the Legislature choose that remedy even for records of persons who were ultimately acquitted. As illustrated by G. L. c. 276, § 100C, the Legislature was not ignorant of the fact that some persons are wrongly accused of crime and wrongly brought before the courts on those charges. When addressing the precise predicament of a wrongfully accused adult unfairly acquiring a criminal record, the Legislature still opted

for sealing, not destruction or expungement of records.[13] As to both juveniles and adults, the Legislature is apparently satisfied with provisions for confidentiality and sealing of records to address the precise problem posed by such wrongful or mistaken accusations of criminal conduct.

3. *Conclusion.* We therefore reverse that portion of the order of expungement that is directed at the commissioner.[14] The case

[13]As such, expungement of the record following the dismissal of charges, or following acquittal, cannot be treated as merely "correcting" a record that is "inaccurate" in the sense that the person should not have been charged. Here, the probation records accurately reflect that the juvenile was charged with particular offenses on a particular date, that the matters were heard in court on particular dates, that the juvenile attended court on those dates, and that the charges were dismissed on a particular date. Whether the proceedings chronicled in the probation records *should* have occurred does not change the fact that they *did* occur, and the juvenile's contention that he should not have been charged in the first place does not make the records themselves "inaccurate." Cf. *Commonwealth* v. *S.M.F.*, 40 Mass. App. Ct. 42, 45 (1996), where the person seeking expungement was never actually charged or brought before the court, but whose name had been used by the actual defendant. Steps to correct genuine inaccuracies in the probation record (e.g., to delete a notation of a default if the juvenile in fact appeared, or to correct the juvenile's name), and steps to prevent the information in the record from being misleading, are permissible and appropriate.

[14]The portion of the expungement order that we reverse, although directed at the commissioner, also required the commissioner to notify "the appropriate clerk, probation officer and the Department of Youth Services" of the order, and then ordered "expungement of the name of this juvenile and any and all accompanying personal data relating to this case and to his arrest maintained in the files of said clerk, probation officer and Department of Youth Services." This part of the order parallels the sealing provisions of G. L. c. 276, § 100B, which require the commissioner to notify the clerk, probation officer, and Department of Youth Services (department) of any sealing of juvenile records, whereupon the clerk, the probation officer, and the department are to seal the corresponding files in their records. Just as the Legislature has opted for confidentiality and sealing, not expungement, of probation records, it has opted for confidentiality and sealing, not expungement, of the clerk's records, probation officer's records, and department's records after notification by the commissioner. While there has been no separate appeal from this expungement order filed by the Juvenile Court clerk, any individual probation officer, or the department, the expungement of their records ordered below is linked directly to the expungement of the probation records maintained by the commissioner. In reversing the expungement order with respect to the commissioner's records, it is also reversed as to his obligation to notify the clerk, the probation officer and the department and as to the expungement of their records. That aspect of the expungement order is not authorized, for the same reasons that it is not authorized as to the commis-

is remanded to the Juvenile Court for entry of an order consistent with this opinion.

*So ordered.*

IRELAND, J. (dissenting, with whom Greaney, J., joins). I respectfully dissent because I interpret the statute, in conjunction with the Juvenile Court judges' mandate to treat those appearing before them not as criminals but as children in need of aid, encouragement, and guidance, to give those judges the inherent power to expunge probation records in appropriate cases. I believe that as a matter of public policy, Juvenile Court judges do and should have this power.

In a case such as this one, where the parties were given adequate notice and opportunity to be heard, and the judge issued a written statement setting forth the facts, the interests considered, and the reasons for the order, see *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 669 (1978) (*Police Comm'r*), I would conclude that the expungement order was within the judge's discretion to further the best interests of the child. See *id.* at 668.

The juvenile justice system treats those before it "not as criminals, but as children in need of aid, encouragement and guidance." *Police Comm'r, supra* at 666, quoting G. L. c. 119, § 53. To that end, a Juvenile Court judge is guided by the best interests of the child, and "has very broad discretion . . . to further the child's best interests." *Commonwealth* v. *Balboni*, 419 Mass. 42, 46 (1994). "There would be a considerable irony if a court charged with exercising its function in a manner consistent with [G. L. c. 119, § 53,] was viewed not to have the power . . . to ensure that in proper circumstances the juvenile shall suffer no injury as a result of involvement with the judicial process. . . ." *Police Comm'r, supra* at 668. There is considerable irony in today's decision.

Even adopting the court's reading of G. L. c. 276, § 100B, to

sioner's records pertaining to this juvenile, and where that aspect of the order flows through the order to the commissioner, it is also reversed by our decision today.

apply to juveniles who have not been adjudicated delinquent, the language of the statute plainly states that juveniles "may" request that the commissioner seal their files. *Id.* This construction is "entirely permissive," and in no way suggests that the Legislature intended sealing to be an exclusive remedy. R.M. Kantrowitz & R. Witkin, Criminal Defense Motions § 12.17A, at 128 (Supp. 2001). Nor is there any indication in the statute of a legislative intent to limit judges' use of their ancillary powers. Adult cases rejecting this approach are contrasted with this one, in which the duty of Juvenile Court judges to further the best interests of the children appearing before them, and to treat them "not as criminals, but as children in need of aid, encouragement and guidance," G. L. c. 119, § 53, compels a different result. See, e.g., *Vaccaro* v. *Vaccaro*, 425 Mass. 153, 157 (1997), quoting *Police Comm'r, supra* at 662-663 (no power to expunge record from domestic violence record-keeping system where power neither "articulated expressly" in legislation nor "capable of being deduced by 'necessary and inevitable' implication," such as from unique goals of juvenile justice system).

As a matter of public policy, I believe the unique history, goals, and policies of the juvenile justice system provide the Juvenile Court judge with the inherent power to order expungement. It is only common sense. I would emphasize that Juvenile Court judges' inherent power to accomplish the directive of aiding, encouraging, and guiding children logically should include the power of expungement,[1] which, of course, should only be exercised "in proper circumstances." *Police Comm'r, supra* at 668. As we explained, *id.* at 656, the value of arrest records "is in direct proportion to the extent that the assumptions underlying the utility of the records are in fact

---

[1]Expungement leaves "no trace," *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 648 (1978), in the sense that the information is no longer connected to the juvenile. It does not, however, interfere with the commissioner's statutory duty to compile, evaluate, and disseminate "statistical information" on delinquency. G. L. c. 276, § 98. A record that an appearance was made in the Juvenile Court on a certain date regarding a certain charge, compiled purely for statistical purposes, can cause no harm to the juvenile whose name and other identifying features are in no way associated with the information. See *id.* at 668 n.20.

valid. . . . In so far as these assumptions differ from reality, the adverse action will have an erroneous basis." A Juvenile Court judge is in the best position to make an individualized determination of how best to aid, encourage, and guide a child. Expungement is and should be one of the tools available to accomplish this crucial societal undertaking. I respectfully dissent.