COMMONWEALTH *vs.* TINA BOE.[1]

Suffolk. January 5, 2010. - March 25, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Criminal Records. Practice, Criminal,* Dismissal, Record.

A Boston Municipal Court judge erred in denying the commissioner of
    probation's motion to reconsider and vacate an order of expungement of
    the defendant's probation record, related to a criminal complaint that
    issued against the defendant by mistake and had been dismissed, where the
    judge lacked authority to order expungement, given that the Legislature
    has clearly prescribed the remedy for limiting access to probation records
    when a criminal case has been dismissed, i.e., the sealing of the defend-
    ant's probation record pursuant to G. L. c. 276, § 100C, and there was no
    indication that the defendant's probation record was inaccurate or false
    such that expungement would be permissible under the court's inherent
    authority to "correct" the record through expungement. [340-349]

COMPLAINT received and sworn to in the West Roxbury Divi-
sion of the Boston Municipal Court Department on September
11, 2006.

A motion to expunge was heard by *Kathleen E. Coffey*, J.,
and a motion to reconsider was considered by her.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*James J. Arguin*, Assistant Attorney General, for the Com-
monwealth.

*Jonathan P. Harwell* for the defendant.

*Pauline Quirion* for Union of Minority Neighborhoods, ami-
cus curiae, submitted a brief.

SPINA, J. In this case we are asked to decide whether a judge
has the authority to order the Commissioner of Probation (com-
missioner) to expunge a defendant's record where the criminal
complaint was dismissed because its issuance was premised on

[1]A pseudonym.

a mistake. We conclude that a judge does not have such authority, but the judge may order that such a defendant's record be sealed pursuant to G. L. c. 276, § 100C.[2]

1. *Background.* We set forth the relevant facts from the undisputed findings of the Boston Municipal Court judge. On July 12, 2006, an automobile accident occurred in the Roslindale section of Boston. The vehicles involved were a 2001 Chevrolet Impala, driven by Jennifer Cataloni, and a 2001 Honda Odyssey, driven by a short Hispanic male wearing a Red Sox baseball cap and a plaid shirt. When Cataloni requested the license and motor vehicle registration of the male driver, he told her that the car was not his, he threatened to return to the scene with a gun, and then he drove away without providing his name, address, or registration. Cataloni, who had recorded the registration plate number of the Honda, contacted the Boston police and reported the accident to Officer Patrick Flaherty. In addition, a passenger in Cataloni's vehicle complained of a back injury and was taken to a hospital for medical treatment.

The police traced the registration plate information through the registry of motor vehicles and learned that the Honda driven by the unknown Hispanic male was registered to the defendant, Tina Boe. On July 15, 2006, Officer Lawrence Calderone mailed her a citation for violating G. L. c. 90, § 24(h)(2) (a½) (1), by leaving the scene of an accident after causing personal injury. Four days later, Officer Calderone applied for a criminal complaint in the West Roxbury Division of the Boston Municipal Court Department, and a hearing was scheduled before a clerk-magistrate on September 11, 2006, to determine whether probable cause existed to support the charge. Boe arrived on time for the hearing, but a court employee mistakenly directed her to an arraignment session. As instructed, she waited for her name to be called. After a long period of time had elapsed, she asked another employee about the status of her case and was informed that she was in the wrong

---

[2]There is a significant difference between expunging a criminal record and sealing it. When a record is expunged, all traces of it vanish, and no indication is left behind that information has been removed. See *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 648 (1978). In contrast, "[w]hen records are sealed under G. L. c. 276, § 100C, they do not disappear; they continue to exist but become unavailable to the public." *Commonwealth* v. *Roberts*, 39 Mass. App. Ct. 355, 356 (1995).

location. Boe then was directed to the clerk's office where she learned that, in her absence, a criminal complaint had issued against her for violating G. L. c. 90, § 24(h)(2) ($a^{1/2}$) (1). She was informed that she would receive a summons by mail for her next court date.

On September 26, 2006, Boe was arraigned and appointed an attorney. At a pretrial hearing on November 3, 2006, Boe and the Commonwealth filed a joint motion to dismiss the complaint and to expunge "all information regarding this case . . . from the criminal record of the Probation Department, Commissioner of Probation, and other appropriate agencies."[3] The parties asserted that expungement was appropriate because the complaint should not have issued in the first instance where Officer Calderone erroneously assumed that Boe, as registered owner, was operating the Honda at the time of the accident when, in fact, the police report clearly described the operator of the Honda as male. A judge allowed the motion, dismissed the complaint, and issued an order directing the commissioner to expunge Boe's criminal record.

On January 18, 2007, the commissioner filed a motion to reconsider and vacate the order to expunge Boe's criminal offender record information on the grounds that the judge lacked statutory authority to issue such an order, and that Boe's only remedy was the sealing of her record pursuant to G. L. c. 276, § 100C.[4] The judge denied the commissioner's motion, concluding that because the criminal complaint had been issued erroneously based on

---

[3]Because the charge against Boe arose as a result of a citation and summons to appear in court, she was not arrested. Consequently, her expungement motion did not include a request to expunge arrest or other police records such as photographs, fingerprints, and the like.

[4]Following entry of the expungement order, the commissioner had thirty days to file a motion to reconsider and vacate. See *Commonwealth* v. *Balboni*, 419 Mass. 42, 43-44 (1994) (motion to reconsider and vacate filed by Department of Probation more than two years after entry of expungement order deemed untimely and, therefore, not considered). The motion here was filed approximately seventy-four days after entry of the expungement order. Nonetheless, the judge stated that where Boe was not prejudiced by the delay, "[t]he goals of due process and fairness to all parties are advanced by a waiver of the time restriction." In her brief before this court, Boe has not set forth any reasons why she was prejudiced by the judge's consideration of the commissioner's motion to reconsider and vacate. The judge's decision, in this regard, did not constitute an abuse of her discretion.

misidentification of Boe as the perpetrator of the crime, expunge-
ment of her criminal record was "appropriate" and "just" relief.
The judge stated that sealing Boe's record pursuant to § 100C
would be an "inadequate" remedy when balanced against the
wrongful basis and misleading circumstances on which the com-
plaint was issued, and that Boe should not have to live under a
"cloud of prosecution" with a sealed record.

The commissioner then filed a notice of appeal.[5] A divided
panel of the Appeals Court affirmed the judge's order to expunge
Boe's criminal record. See *Commonwealth* v. *Boe*, 73 Mass.
App. Ct. 647, 649-652 (2009). It concluded that the particular
circumstances of this case caused it to fall outside the ambit of
G. L. c. 276, § 100C, where the complaint against Boe never
should have issued, thereby saddling her with an unwarranted
criminal record that would be accessible to law enforcement
authorities. See *id.* The dissent opined that the court could not
affirm the order of expungement where G. L. c. 276, § 100C,
prescribes how the records of dismissed prosecutions, even those
commenced without substantial basis or after an apparently
slipshod investigation, shall be maintained. See *id.* at 652-656
(Grasso, J., dissenting). We granted the commissioner's applica-
tion for further appellate review.[6]

2. *Discussion.* The commissioner argues that where a court
has dismissed criminal charges against a defendant, the appro-
priate remedy is the sealing of the defendant's probation rec-
ords pursuant to G. L. c. 276, § 100C. As such, he continues,

---

[5]The commissioner is the only party who has appealed from the order of
expungement. He has expressed no opinion on the propriety of the expunge-
ment order as purportedly directed to other State officials, including the clerk
of the court or the criminal history systems board (board). The commis-
sioner's appeal is limited to the records of the Department of Probation which,
in his view, are expressly subject to sealing under G. L. c. 276, § 100C.
Because there is not before us any challenge to the judge's allowance of the
expungement motion with respect to records held by the board or by the clerk
of the court, we do not consider that portion of the judge's expungement
order. We note that a defendant's criminal offender record information,
maintained by the board, is accessible to a wider number of individuals, agen-
cies, and institutions than a defendant's sealed record on file with the
commissioner. Compare G. L. c. 6, §§ 172-172I, with G. L. c. 276, §§ 100A-
100C.

[6]We acknowledge the amicus brief filed by the Union of Minority Neighbor-
hoods in support of Boe.

the judge here lacked the authority to order the commissioner to expunge Boe's record. We agree.[7]

We begin with an overview of the relevant statutory provisions. Pursuant to G. L. c. 276, § 100, information compiled by probation officers concerning persons on probation "shall not be regarded as public records and shall not be open for public inspection but shall be accessible to the justices and probation officers of the courts, to the police commissioner for the city of Boston, to all chiefs of police and city marshals, and to such departments of the state and local governments as the commissioner may determine." On payment of a three-dollar fee for each search, "such records shall be accessible to such departments of the federal government and to such educational and charitable corporations and institutions as the commissioner may determine."[8] *Id.*

In order further to restrict access to probation records, the

[7]Boe has argued that, under the equitable doctrine of judicial estoppel, the commissioner cannot challenge the expungement of her record where the Commonwealth explicitly assented to such a remedy in a joint pretrial motion. Judicial estoppel "precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." *Otis* v. *Arbella Mut. Ins. Co.*, 443 Mass. 634, 640 (2005), quoting *Blanchette* v. *School Comm. of Westwood*, 427 Mass. 176, 184 (1998). "The purpose of the doctrine is to prevent the manipulation of the judicial process by litigants." *Canavan's Case*, 432 Mass. 304, 308 (2000). The flaw in Boe's argument is that she treats the commissioner and the Suffolk County district attorney's office as essentially the same party. They are not. Probation functions are within the judicial branch of government, whereas the office of a district attorney is within the executive branch. See *Commonwealth* v. *Milton*, 427 Mass. 18, 22 (1998), and cases cited. Although the Suffolk County district attorney's office is the Commonwealth's representative in criminal prosecutions before the Boston Municipal Court, see G. L. c. 218, § 27A (*g*), the interests of the commissioner are represented by the Attorney General. See G. L. c. 12, § 3. That the district attorney assented to expungement in the joint pretrial motion does not judicially estop the commissioner from arguing, in a separate and subsequent proceeding, that expungement is not an appropriate remedy. The commissioner was not a party to the underlying criminal proceedings and is not precluded from now challenging the expungement order.

[8]In response to written questions from this court, the commissioner states that there are two parts of a "probation record." The first part consists of court activity record information (CARI), which reflects the record of all trial court appearances and dispositions in criminal cases, juvenile proceedings, and civil protective-order proceedings. The second part consists of "case folder information" compiled by probation officers in connection with their supervision of individuals referred to probation. According to the commissioner, probation

Legislature has enacted a comprehensive scheme for sealing such records, which are maintained by the commissioner. See G. L. c. 276, §§ 100A, 100B, and 100C (sealing statutes). As applicable to the present case, G. L. c. 276, § 100C, states, in relevant part:

> "In any criminal case wherein a nolle prosequi has been entered, or a dismissal has been entered by the court, . . . and it appears to the court that substantial justice would best be served, the court shall direct the clerk to seal the records of the proceedings in his files. The clerk shall forthwith notify the commissioner of probation and the probation officer of the courts in which the proceedings occurred or were initiated who shall likewise seal the records of the proceedings in their files."

Such a sealed record shall not disqualify an individual from public employment with the Commonwealth or any political subdivision thereof. See *id.* Further, "[t]he commissioner, in response to inquiries by authorized persons other than any law enforcement agency or any court, shall in the case of a sealed record report that no record exists." *Id.*

Putting aside for a moment the confluence of events that resulted in the issuance of a criminal complaint against Boe, Massachusetts appellate decisions have construed the unambiguous language of G. L. c. 276, § 100C, as conferring on a judge the authority, in appropriate circumstances, to order sealing, but not expungement, of the probation and court records of dismissed prosecutions. See *Commonwealth v. Roe*, 420 Mass. 1002 (1995) (where charges against defendant were dismissed for want of

records are intended primarily for the use of judges and probation officers in the performance of their duties. The commissioner states that he has not authorized any third party (i.e., noncourt personnel) to receive CARI. He refers all third-party requests for access to CARI to the board because the Legislature has designated the board as the disseminator of all criminal offender record information. See G. L. c. 6, § 172. Boe does not dispute this. However, she points out that grants of access to such "departments of the state and local governments as the commissioner may determine" and to "such departments of the federal government and to such educational and charitable corporations and institutions as the commissioner may determine," G. L. c. 276, § 100, are subject to the discretion of the commissioner (which could change), but that grants of access to "the justices and probation officers of the courts, to the police commissioner for the city of Boston, and to all chiefs of police and city marshals" do not appear to be discretionary.

prosecution, court stated that defendant's motion to expunge was properly denied because existence of sealing statute, G. L. c. 276, § 100C, provided remedy to protect confidentiality of criminal records); *Commonwealth* v. *Balboni*, 419 Mass. 42, 44, 46-47 (1994) (although Department of Probation's motion to reconsider and vacate order allowing expungement of dismissed complaint deemed untimely, G. L. c. 276, § 100C, was controlling and provided for confidentiality of probation records by sealing, not expungement); *Commonwealth* v. *Roberts*, 39 Mass. App. Ct. 355, 357-358 (1995) (where defendant sought to expunge record after criminal charge dismissed, judge erred in allowing expungement because judge was limited by statutory scheme described in G. L. c. 276, § 100C, to sealing defendant's record). Cf. *Commonwealth* v. *Doe*, 420 Mass. 142, 143, 152-153 (1995) (where charges against defendant resolved by prosecution's entry of nolle prosequi, judge properly denied defendant's petition to seal record where defendant failed factually to substantiate case for sealing); *Commonwealth* v. *Vickey*, 381 Mass. 762, 763-764, 766-767, 771-772 (1980) (where defendant pleaded guilty to crime, was granted full pardon by Governor, and sought to have record of conviction sealed, defendant's request did not come within provisions of G. L. c. 276, §§ 100A or 100C, and defendant could not rely on court's inherent or ancillary powers to bypass specific statutory language).

More recently, in *Commonwealth* v. *Gavin G.*, 437 Mass. 470 (2002), we reiterated that, in light of the protections afforded court and probation records by way of the sealing statutes, a judge does not have the authority to order expungement of such records. In that case, a juvenile was arraigned on charges of being a disorderly person and participating in an affray, but the Commonwealth was unable to proceed when two witnesses failed to appear for trial, so the judge dismissed the cases without prejudice. See *id.* at 471. The juvenile filed a motion to expunge his police and probation records, which a judge in the Juvenile Court allowed. See *id.* at 471-472. In reversing that portion of the expungement order directed to the commissioner,[9] we pointed out

---

[9]Because the Saugus police department did not appeal from the expungement order, the propriety of the portion of the order pertaining to police records was not before the court and, therefore, was not addressed. See *Commonwealth* v. *Gavin G.*, 437 Mass. 470, 472 n.3 (2002).

that the confidentiality of Juvenile Court proceedings, juvenile records maintained by the court, and juvenile records maintained by the Department of Probation was protected by a detailed statutory scheme, including the sealing provisions of G. L. c. 276, § 100B. See *id.* at 473-475. However, our decision in that case continued, "[c]onspicuously absent from [the] entire legislative scheme governing court and probation records, whether for adults or juveniles, is *any* suggestion that the Legislature intended such records to be destroyed" (emphasis in original).[10] *Id.* at 482. Significantly, for our purposes here, the court recognized that:

> "[T]he Legislature was not ignorant of the fact that some persons are wrongly accused of crime and wrongly brought before the courts on those charges. When addressing the precise predicament of a wrongfully accused adult unfairly acquiring a criminal record, the Legislature still opted for sealing, not destruction or expungement of records. As to both juveniles and adults, the Legislature is apparently satisfied with provisions for confidentiality and sealing of records to address the precise problem posed by such wrongful or mistaken accusations of criminal conduct" (footnote omitted).[11]

*Id.* at 482-483.

We recognize that in certain limited circumstances, expungement of a defendant's criminal record has been permitted. How-

---

[10]In *Commonwealth* v. *Gavin G., supra* at 482, the court pointed out that "when confronted with a proposal that records of all juvenile proceedings be expunged when the juvenile reached seventeen years of age, the Legislature did not opt to provide that remedy. See 1971 House Doc. No. 4290." Given the unique history, goals, and policies of the juvenile justice system to protect and act in furtherance of a child's welfare, see *id.* at 472, it is doubtful that the Legislature intended to provide greater confidentiality protections to the records of adult offenders than it was willing to extend to juveniles.

[11]On a related note, in the context of evaluating whether to allow a defendant's petition to seal his record under G. L. c. 276, § 100C, the court in *Commonwealth* v. *Doe*, 420 Mass. 142, 151 (1995), stated that a defendant's case for confidentiality "becomes stronger if the dropping of the charge *is premised on a 'mistake' in bringing it* (for example, defendant was misidentified or police acquired credible information exonerating defendant), . . . and it is correspondingly weakened if the prosecutor is simply unable to prove the charge" (emphasis added). See *Commonwealth* v. *Roberts*, 39 Mass. App. Ct. 355, 358 (1995) (case for sealing record strong where prosecution abandoned because founded on mistake).

ever, those instances are distinguishable from the present case. In *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 642 (1978), concededly a case that did not involve probation records, a judge dismissed a complaint charging a juvenile with an act of delinquency when the Commonwealth informed the judge that it could not proceed with the case because of the unavailability of the alleged victim. The judge then ordered the police department of Boston to expunge from its records the fingerprints, photographs, and other records pertaining to the juvenile's arrest, and to retrieve copies of such data sent to other law enforcement agencies for destruction by the court. See *id.* at 641. Significantly, in reviewing the propriety of the expungement order, this court stated that "there are no statutes in the Commonwealth regulating the maintenance and dissemination of juvenile *arrest* records" (emphasis added).[12] *Id.* at 660. Recognizing that there was a "grave potential for injury to a juvenile" from the existence and dissemination of such records, *id.*, we opined that "the power to order expungement or its equivalent . . . may be exercised by the courts of the Commonwealth as a necessary adjunct to their exercise of judicial power."[13] *Id.* at 661. Given the broad mandate of the Juvenile Court Department to act in furtherance of a child's welfare, we

---

[12] In *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, *supra* at 652, the court distinguished statutes that explicitly protect juvenile *court* and *probation* records. It reviewed the protections afforded to juveniles under G. L. c. 276, §§ 100A and 100B, but it pointed out that those statutes do *not* encompass "records not maintained by either the court or probation department," such as records maintained and disseminated by law enforcement agencies, which were at issue in that case. *Id.* at 653. We have stated that "[i]mplicit in [this] distinction is the conclusion that, where such statutory or regulatory protections do exist, a Juvenile Court judge has no inherent authority to order expungement of the records." *Commonwealth* v. *Gavin G.*, *supra* at 473.

[13] "The inherent powers of the judiciary are those 'whose exercise is essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases.' " *Querubin* v. *Commonwealth*, 440 Mass. 108, 114 (2003), quoting *Gray* v. *Commissioner of Revenue*, 422 Mass. 666, 672 (1996). A court's inherent powers exist independently from statute because they directly affect the capacity of the judicial department to function. See *Querubin* v. *Commonwealth*, *supra* at 114-115. The very concept of inherent power "carries with it the implication that its use is for occasions not provided for by established methods." *Brach* v. *Chief Justice of the Dist. Court Dep't*, 386 Mass. 528, 536 (1982), quoting *O'Coin's, Inc.* v. *Treasurer*

concluded that, in the proper circumstances, a judge could order expungement of police records following the dismissal of delinquency proceedings. *Id.* at 641, 668-669. The basis for our conclusion that the court could exercise its inherent or ancillary powers in such circumstances was premised on legislative silence with respect to the maintenance of a juvenile's police records and on the unique goals of the juvenile justice system. Those factors are not present here.

Similarly, in *Commonwealth* v. *S.M.F.*, 40 Mass. App. Ct. 42, 43-45 (1996) (*S.M.F.*), the Appeals Court concluded that where the record-sealing statutes are *not* applicable, a trial court may invoke its inherent judicial power to order expungement of a defendant's criminal record. In that case, an impostor who likely had stolen S.M.F.'s identifying documents was arrested, falsely identified herself as S.M.F., and appeared before the court on criminal charges, continuing to pretend that she was S.M.F. See *id.* at 42-43. By the time the impostor's deception was uncovered, S.M.F.'s name and personal data, the criminal complaints against her, and the disposition of those complaints had been entered in the records of the Department of Probation. See *id.* S.M.F. filed a motion to expunge all data and records under that name from the court, the Department of Probation, and the criminal history systems board, which was allowed. See *id.* at 43. On appeal, the Appeals Court pointed out that G. L. c. 276, § 100C, "deals with the confidentiality of records of persons against whom proceedings were begun by a deliberate act of prosecution against the named person." *Id.* at 44. In the unique circumstances of *S.M.F.*, where the deliberate act of prosecution was not against S.M.F., the court concluded that G. L. c. 276, § 100C, was inapplicable, and, therefore, the trial court could invoke its inherent power to expunge the criminal records under the name of S.M.F. See *id.* at 44-45. Expungement was an appropriate remedy because the facts of the case did not place it within the categories of dis-

*of the County of Worcester*, 362 Mass. 507, 516 (1972). The existence of statutory authority governing a particular matter negates the exercise of a court's inherent powers in that regard. See note 12, *supra.* See also *Commonwealth* v. *Jackson*, 369 Mass. 904, 919-920 (1976) (court does not possess inherent power to suspend imposition of mandatory minimum sentence prescribed by statute; it is not court's function to question necessity, expediency, or wisdom of settled legislative judgment).

positions contemplated by the sealing statutes — criminal proceedings were never initiated against the "real" S.M.F. See *Commonwealth* v. *S.M.F., supra* at 45. Further, if criminal records were preserved, they would be wholly false and misleading. See *id.* at 46. That is not the situation here, where proceedings were begun by an application for a criminal complaint against Boe, not an impostor attempting to perpetrate a fraud on the court, and where the eventual dismissal of such complaint brought the matter squarely within the purview of § 100C.[14]

Turning now to the confluence of events that resulted in the issuance of a criminal complaint against Boe, we acknowledge that the circumstances giving rise to the criminal proceedings were not of her own making. The error by the police in misidentifying Boe as the operator of the vehicle involved in the accident was compounded by the court's error in misdirecting Boe for her September 11, 2006, show cause hearing, resulting in her absence from the proceeding and the issuance of a criminal complaint against her for violating G. L. c. 90, § 24(*h*)(2) (*a*½) (1). Nonetheless, where the Legislature has clearly prescribed the remedy for limiting access to probation records when a criminal case has been dismissed, it is not the province of this court to decide that a different remedy would be more appropriate. See *Commonwealth* v. *Gavin G., supra* at 482-483.

"It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *James J. Welch & Co.* v. *Deputy Comm'r of Capital Planning & Operations*, 387 Mass. 662, 666 (1982), quoting *Caminetti* v. *United States*, 242 U.S. 470, 485 (1917). It is not proper for a court, under the guise of correcting a

---

[14]Although not directly on point, we note that a judge does have the inherent authority to expunge a civil abuse-protection order, issued pursuant to G. L. c. 209A, from the Statewide domestic violence record-keeping system (maintained by the office of the commissioner) in the rare and limited circumstances where the judge has found by clear and convincing evidence that the order was obtained through fraud on the court. See *Commissioner of Probation* v. *Adams*, 65 Mass. App. Ct. 725, 732, 737 (2006) (stating that sealing record of c. 209A order would not remedy defiling of court). Contrast *Vaccaro* v. *Vaccaro*, 425 Mass. 153, 157-158 (1997) (where domestic violence records maintained in response to express legislative directive that contains no expungement provision, expungement is not available remedy). The facts of the present case do not involve fraud on the court.

perceived inadequacy or injustice in a statutory scheme, to "read into [a] statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose." *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999), quoting *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). See *Commonwealth* v. *Gavin G.*, *supra* at 476 ("The juvenile cannot, merely by pointing to ostensible holes or inadequacies in the legislative scheme protecting his records, pretend that the Legislature has not provided the protections that it deems appropriate and sufficient"). If the Legislature had wanted to include expungement as a remedy in those instances where a court dismisses a criminal complaint against a defendant, then it easily could have done so. See, e.g., G. L. c. 22E, § 15 (permitting expungement of records collected in State DNA database where conviction reversed and case dismissed); G. L. c. 258D, § 7 (permitting expungement of records pertaining to claimant's erroneous felony conviction). The Legislature has chosen not to provide for such a remedy.

We recognize that a court can exercise its inherent power to "correct" its own records. See *Bolduc* v. *Commissioner of Correction*, 355 Mass. 765, 767 (1969) (court had plenary power to order that mittimus be corrected so as to conform with sentence actually imposed); *Webb* v. *Cohen*, 280 Mass. 292, 293 (1932) ("There is an inherent and necessary power in a court of justice acting on the motion of an interested party . . . or on its own motion to correct errors and remedy omissions in its records in order that they shall speak the truth"). Here, however, there is no evidence that Boe's probation record is inaccurate or false such that expungement would be permissible under the court's inherent authority to "correct" the record. Boe was charged with a particular offense on a particular date, a show cause hearing was held, a complaint issued, and the matter ultimately was dismissed. That Boe should not have been charged with a crime in the first place does not render the information in the record inaccurate or misleading, and, in such circumstances, the Legislature has concluded that the appropriate remedy is the sealing of her record.[15] See *Commonwealth* v. *Gavin G.*, *supra* at 482-483 &

---

[15]We do not address whether the statutory requisites for sealing have been satisfied in this case. The second paragraph of G. L. c. 276, § 100C, authorizes the sealing of a defendant's records only when "it appears to the court that

n.13 (whether proceedings chronicled in probation records *should* have occurred does not change fact that they *did* occur, and contention that charges should not have been filed in first instance does not make records themselves "inaccurate").

3. *Conclusion.* The portion of the expungement order that is directed to the commissioner is reversed. This case is remanded to the Boston Municipal Court so that the judge may entertain a motion to seal Boe's record in conformity with G. L. c. 276, § 100C.

*So ordered.*

---

substantial justice would best be served." A defendant seeking to have criminal records sealed must follow the two-step procedure described in *Commonwealth v. Doe*, 420 Mass. 142, 149-151 (1995). In deciding whether "substantial justice" supports sealing a record, a judge should look to the reason for the dismissal and the risk of specific harm to the defendant if the record is not sealed. See *id.* at 151-152. The Appeals Court rightly recognized the unfairness, in the circumstances presented here, of placing the burden on Boe to show that her probation record should be sealed. See *Commonwealth v. Boe*, 73 Mass. App. Ct. 647, 651 n.7 (2009). Nonetheless, that is how the Legislature has determined that a defendant in Boe's position, having had her criminal case dismissed, must proceed.