COMMONWEALTH vs. PAUL MOE.[1]

Suffolk. May 10, 2012. - September 6, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Criminal Records. Practice, Criminal,* Record.

A Boston Municipal Court judge properly denied the defendant's motion to expunge his criminal records after he had been falsely accused of assault by means of a dangerous weapon, where the Legislature has provided sealing as the exclusive remedy to protect the confidentiality of such records, and where, because the alleged victim's attempt to extort money from the defendant did not result in court records that were themselves completely false or misleading, the judge lacked equitable authority to expunge the records as an adjunct of the exercise of judicial power. [372-376]

COMPLAINT received and sworn to in the West Roxbury Division of the District Court Department on March 26, 2009.

A motion to expunge was heard by *Ernest L. Sarason, Jr.,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Mary Ann Chase* for the defendant.

*Argie K. Shapiro*, Assistant Attorney General, for the Commonwealth.

BOTSFORD, J. The defendant was falsely accused of assaulting with a gun Ramon Benzan, a person who was performing work for the defendant. After the criminal complaint issued, it became apparent that Benzan had lied to a Boston police detective about the alleged assault in an attempt to extort money. The prosecutor filed a nolle prosequi. The defendant later moved to expunge his criminal records, arguing that the judge had the equitable authority to do so because Benzan had committed fraud on the court. A Boston Municipal Court judge denied the motion, concluding that the case was controlled by this court's decision in *Commonwealth* v. *Boe,* 456 Mass. 337 (2010) (*Boe*),

[1] A pseudonym.

and that under G. L. c. 276, § 100C, as explicated in *Boe*, the judge had no power to issue an order of expungement. We agree and affirm the judge's decision.

1. *Background.*[2] On the morning of March 25, 2009, Benzan arrived at the defendant's house in the Roslindale section of Boston to work but, within a few hours, stated that he needed to leave immediately to go to New York. The defendant offered to give Benzan a ride to a subway station, and Benzan accepted. Benzan asked to be paid for his work in cash rather than by check, and to accommodate the request, the defendant dropped off Benzan at the station, withdrew money from a bank, and returned. Benzan swore at the defendant and demanded more money, but the defendant refused to pay Benzan anything more. About forty-five minutes later, the defendant received a telephone call from a Boston police officer, asking if Benzan worked for him. The officer told the defendant that Benzan claimed that the defendant owed him money and had "pulled a gun" on him. The defendant responded that he did not own a gun and that the officer could meet him at his house to discuss the matter.

Thirty minutes after the telephone call, six police officers arrived at the defendant's house, placed him under arrest, and brought him to the West Roxbury police station. The next day, March 26, the arresting officer filed a criminal complaint against the defendant, charging him with assault with a dangerous weapon, namely a gun. See G. L. c. 265, § 15B (*b*).

Shortly thereafter, Benzan contacted the defendant's attorney (on several occasions) and told him that unless the defendant paid Benzan $5,000, Benzan would go to "national television" with his allegation. Benzan also said he was going to be deported and had "nothing to lose." The attorney provided the prosecutor with a copy of a letter sent by Benzan in which Benzan again threatened public exposure on television unless the defendant "settle[d]" the matter out of court for $5,500. The prosecutor met with Benzan in person and then spoke with the arresting officer to determine whether it was appropriate to drop the case. The arresting officer said he had never spoken with Benzan, but

---

[2]The facts are taken from the defendant's "statement of facts" in his motion to expunge. The judge accepted and incorporated the statement of the facts, which was unchallenged, in his decision.

that a detective had. According to the detective, on the day of the incident, Benzan first told him that he saw the defendant with a gun but, on further questioning, said that he did not see a gun. The detective did not believe Benzan's story.[3] After receiving this information, the prosecutor filed a nolle prosequi on August 26, 2009, because "based on the evidence it would not be in the interest of justice to further prosecute this case."

The defendant filed a motion to expunge his criminal records, "including but not limited to all police records, probation records, and criminal history board[] records." The judge held a hearing on the motion on April 8, 2011. The motion was opposed by the Commissioner of Probation.[4] In his decision denying the motion, the judge concluded that, although the defendant had "suffered a grave injustice," the judge had no legal authority to expunge the criminal records. He ruled that the defendant's only remedy was to request sealing of his records, pursuant to G. L. c. 276, § 100C.[5] The defendant appealed, and we granted his application for direct appellate review.

2. *Discussion.* We begin with the text of the relevant statute, G. L. c. 276, § 100C (§ 100C), which by its terms provides for the sealing of court and probation records but not expungement:[6]

> "In any criminal case wherein a nolle prosequi has been entered, or a dismissal has been entered by the court, except in cases in which an order of probation has been terminated, and it appears to the court that substantial justice would best be served, the court shall direct the

---

[3]Additionally, the police were unable to find any witness to the alleged assault, any record of the emergency telephone calls to the police Benzan stated he had made, or any guns registered to or in the possession of the defendant.

[4]The defendant failed to provide notice of his motion to the Boston police department or the Department of Criminal Justice Information Services (formerly known as the criminal history systems board).

[5]The motion did not request sealing as an alternate remedy.

[6]The Legislature also has enacted two other sealing statutes not directly applicable to this case, G. L. c. 276, § 100A (requiring sealing of records of criminal court appearances and dispositions if certain conditions are met), and § 100B (requiring sealing of delinquency records if certain conditions are met).

The first paragraph of G. L. c. 276, § 100C (§ 100C), mandates the sealing of such records if a defendant is found not guilty, the grand jury return a no bill, or the judge makes a finding of lack of probable cause.

clerk to seal the records of the proceedings in his files. The clerk shall forthwith notify the commissioner of probation and the probation officer of the courts in which the proceedings occurred or were initiated who shall likewise seal the records of the proceedings in their files."

G. L. c. 276, § 100C, second par., as appearing in St. 1973, c. 322, § 1.[7] A line of judicial decisions holds that where a sealing statute is applicable to a particular individual's circumstances, judges generally have no equitable authority to expunge court or probation records, because the Legislature has provided sealing as the exclusive remedy to protect the confidentiality of the records.[8] See *Boe*, 456 Mass. at 342-344, and cases cited. *Boe*, decided in March, 2010, is the latest of these cases.

In the *Boe* case, we recognized that courts have power in certain instances to expunge "as a necessary adjunct to their exercise of judicial power." *Id.* at 345, quoting *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 661 (1978); we also noted that a court has the inherent power to "correct" its own records. *Boe, supra* at 348. Nonetheless, while "[a] court's inherent powers exist independently from statute because they directly affect the capacity of the judicial department to function . . . [t]he existence of statutory authority governing a particular matter negates the exercise of a court's inherent powers in that regard." *Id.* at 345 n.13. See *Commonwealth* v. *S.M.F.*, 40 Mass. App. Ct. 42, 44 (1996) (*S.M.F.*) ("In cases to which [§ 100C] is applicable, exercise of the judicial power of expungement is no longer within the authority of the judge").[9]

---

[7]Effective May 4, 2012, the phrase "except in cases in which an order of probation has been terminated" was deleted. St. 2010, c. 256, § 131. See St. 2010, c. 256, § 145, as amended by St. 2010, c. 359, § 102.

[8]Expungement is a much stronger and more absolute remedy than sealing. "When a record is expunged, all traces of it vanish, and no indication is left behind that information has been removed. See *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 648 (1978). In contrast, '[w]hen records are sealed under G. L. c. 276, § 100C, they do not disappear; they continue to exist but become unavailable to the public.' " *Commonwealth* v. *Boe*, 456 Mass. 337, 338 n.2 (2010) (*Boe*), quoting *Commonwealth* v. *Roberts*, 39 Mass. App. Ct. 355, 356 (1995).

[9]*Boe* points out, however, that even where a statute might generally apply, a

In *Boe*, we found that the court did not have the power to expunge Boe's records. There, a driver reported to a police officer that she had been in a motor vehicle accident with a male driver who left the scene. *Id.* at 338. One week later, a different officer applied for a criminal complaint to issue against Boe, a woman, who was the registered owner of the vehicle driven by the male driver, based on the officer's erroneous assumption that, as owner, she had been driving. The criminal complaint against Boe issued, following a separate mistake by a staff member in the court. *Id.* at 338-339. After the error in identification was discovered, Boe and the Commonwealth jointly moved to dismiss the complaint and to expunge Boe's probation records, and a District Court judge allowed the motion. *Id.* at 339. This court reversed, holding that the judge lacked authority to order expungement. *Id.* at 348-349. Although the complaint against Boe was erroneous in the sense that there was no factual basis for it, there was no indication that the police or anyone else intended to initiate prosecution against someone other than Boe.[10] Nor was there a need to correct the court's records. "That Boe should not have been charged with a crime in the

court still may have inherent authority to expunge at least some kinds of records, "in the rare and limited circumstances where the judge has found by clear and convincing evidence that the order was obtained through fraud on the court." *Boe*, 456 Mass. at 347 n.14 (discussing *Commissioner of Probation* v. *Adams*, 65 Mass. App. Ct. 725 [2006], a case concerned with records of civil abuse protection orders that are part of domestic violence registry).

[10]The court distinguished the facts of *Boe* from those of *Commonwealth* v. *S.M.F.*, 40 Mass. App. Ct. 42 (1996) (*S.M.F.*). In *S.M.F.*, a woman was arrested for assault and battery by means of a dangerous weapon and receiving stolen property. *Id.* at 42. She gave her name as S.M.F. but was in fact an impostor who had access to and likely had stolen S.M.F.'s identifying documents. *Id.* When the deception was discovered, a judge in the Boston Municipal Court ordered, among other things, that S.M.F. be found not guilty and discharged as a defendant, and that a new criminal complaint issue in the name of Jane Doe, the unidentified impostor. *Id.* at 43. The true S.M.F. moved to expunge her criminal records. *Id.* The court found § 100C inapplicable because "the statute deals with the confidentiality of records of persons against whom proceedings were begun by a deliberate act of prosecution against the named person. . . . Here, the deliberate act of prosecution was not against S.M.F. She was not arrested, tried, and acquitted — a case on which G. L. c. 276, § 100C, would have a bearing. Nor was there a decision not to prosecute the complaint. Jane Doe was the person arrested and the Commonwealth has every intention to press the prosecution against Jane Doe if it can find her. . . . Since what occurred does not fit in either of the two

first place does not render the information in the record inaccurate or misleading, and, in such circumstances, the Legislature has concluded that the appropriate remedy is the sealing of her record." *Id.* at 348.

The defendant argues that *Boe* does not control, because unlike *Boe*, where there was at most negligence on the part of the police and court staff in initiating and issuing the complaint, in this case there was fraud on the court. In the defendant's view, his arrest and the subsequent criminal complaint against him were initiated solely on the basis of intentionally false statements made to the police by Benzan, statements that the defendant characterizes as fraudulent. Where the genesis of the complaint is fraudulent, he contends, it infects the entire court process and becomes fraud on the court, and as *Boe* suggested (see note 9, *supra*), the court has authority to respond to fraud on the court by ordering expungement. See *Boe, supra* at 347 n.14. Cf. *Commissioner of Probation* v. *Adams*, 65 Mass. App. Ct. 725, 732, 737 (2006). Cf. also *Rockdale Mgt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. 596, 598 (1994) (trial judges have "inherent power" to counteract fraud on court); *S.M.F.*, 40 Mass. App. Ct. at 46 (judges have power to expunge "fictitious" records).

The defendant's argument fails. As the judge recognized, this case presents a set of facts very similar to those in *Boe*, and that case governs here. In this case, like *Boe*, a factually inaccurate complaint issued, incorrectly charging an innocent party with committing a crime. Although it appears that Benzan did make intentional misrepresentations to a police officer as part of an effort to extort money from the defendant,[11] he never made false statements under oath to the court. Cf. *Commissioner of Probation* v. *Adams*, 65 Mass. App. Ct. at 730 (party obtaining

categories of dispositions contemplated by § 100C, the case falls into that residual category not covered by statute and as to which the inherent judicial power to expunge survives." *Id.* at 44-45.

In *Boe*, we explained that the case was different from *S.M.F.* and expungement was not available, because "proceedings were begun by an application for a criminal complaint against Boe, not an impostor attempting to perpetrate a fraud on the court, and . . . the eventual dismissal of such complaint brought the matter squarely within the purview of § 100C." *Boe, supra* at 347.

[11]Benzan's effort to extort the defendant also would appear to be a crime. See G. L. c. 265, § 25.

abuse prevention order committed fraud on court by making "nineteen separate false statements under oath in four different affidavits submitted to the court"). Rather, the police officer applied for the criminal complaint based on erroneous information. The complaining officer may have acted negligently in failing to investigate further Benzan's story, but negligence is not fraud. More important, it is clear that the officer intended to initiate the complaint against the defendant himself — not an impostor. Thus, this is not a case such as *S.M.F.*, where, because of the actions of the impostor, the court records themselves were completely false and misleading. Like Boe, the defendant should not have been charged with assault by means of a dangerous weapon because no such assault ever occurred. Nonetheless, the criminal records reflect accurately the pertinent underlying facts, namely, that he was charged with this crime, and that the case was later disposed of by entry of a nolle prosequi. The second paragraph of § 100C, which provides for sealing court and probation records of nol prossed cases if "substantial justice would best be served," is thus directly on point, and it provides the sole remedy. Accordingly, and despite the unfortunate consequences, the judge correctly determined that he lacked the equitable authority to grant the relief requested. Cf. *Commonwealth* v. *Gavin G.*, 437 Mass. 470, 473-475, 482-483 (2002) (expungement not available for juvenile records maintained by probation department, even where juvenile's case was dismissed and juvenile contended he was wrongfully accused, because of existence of detailed statutory scheme, including sealing statutes, governing maintenance of and access to juvenile records, and omitting any provision for expungement).

3. *Conclusion.* The order denying the defendant's motion to expunge is affirmed.[12]

*So ordered.*

---

[12]The defendant's motion sought expungement not only of his court and probation records, but also of his police and Department of Criminal Justice Information Services records. The judge denied expungement as to all records. Because the defendant has not argued that these records should be treated differently from his court and probation records, and because only the Commis-

sioner of Probation was notified and appeared in opposition to the motion and the appeal (see note 4, *supra*), we affirm the judge's ruling in its entirety.

On the facts of this case, it appears that sealing would be appropriate, but by statute, this is a matter for the judge's discretion. The defendant is free to file a motion to seal.