NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13384

COMMONWEALTH  vs.  BRADLEY ZUCCHINO.

Essex.      November 6, 2023. – April 1, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.


Motor Vehicle, Operating under the influence, Homicide. Evidence, Blood alcohol test.  Practice, Criminal, Motion to suppress.  Consent.  Statute, Construction.


Indictments found and returned in the Superior Court Department on December 10, 2020.

A pretrial motion to suppress evidence was heard by Salim Rodriguez Tabit, J., and a question of law was reported by him to the Appeals Court.

The Supreme Judicial Court granted an application for direct appellate review.


Murat Erkan (Eric Burdette also present) for the defendant.
Marina Moriarty, Assistant District Attorney, for the Commonwealth.
Barbara A. Smith & George G. Brell, of Missouri, & Matthew J. Stanford, of Arizona, for Mothers Against Drunk Driving, amicus curiae, submitted a brief.


BUDD, C.J.  The defendant, Bradley Zucchino, was charged

with operating a motor vehicle while under the influence of

alcohol causing serious bodily injury and death.  The defendant contends that pursuant to G. L. c. 90, § 24 (1) (e) (§ 24 [1] [e]), evidence of his blood alcohol content (BAC) at the time of the accident is inadmissible at trial because, although his blood was drawn in the course of treatment, the BAC analysis was conducted without his consent.  As discussed infra, the defendant's reading of § 24 (1) (e) is too broad.[1]

1.  Facts and prior proceedings.  We summarize the relevant facts from the pleadings, which are undisputed for the purposes of the instant appeal.  On the evening of January 12, 2020, police responded to the scene of a two-car accident.  In one car, first responders located Yahaira Colon, the driver, and her front seat passenger, Jessica Mercado.  The other car was empty when police arrived, its airbags deployed.  The responding officer observed the defendant sitting outside of the car with a bloody nose.  A firefighter at the scene noted that the defendant smelled of alcohol.  The defendant told police he was heading home from a bar and initially claimed a friend had been driving.  The defendant later told emergency responders that he was the one driving.  All three individuals were transported to the hospital, where Colon was pronounced deceased.

---

[1] We acknowledge the amicus brief submitted by Mothers Against Drunk Driving.

At the hospital, the defendant's blood was drawn in the ordinary course of treatment. The next day, law enforcement applied for, obtained, and executed a search warrant to collect the defendant's blood samples to perform a BAC test. A chemist determined that the defendant's BAC on the night of the accident was between .322 and .326 percent.[2] The defendant was arraigned in the Superior Court and was later indicted for, as relevant here, operating a motor vehicle while under the influence of alcohol causing serious bodily injury (OUI-SBI) pursuant to G. L. c. 90, § 24L (1),[3] and manslaughter by means of operating while under the influence of alcohol pursuant to G. L. c. 265, § 13 1/2.[4]

---

[2] A blood alcohol content of .08 percent or above is over the legal limit. See G. L. c. 90, § 24 (1) (a) (1); G. L. c. 90, § 24L (1).

[3] General Laws c. 90, § 24L (1), provides in part:

"Whoever . . . operates a motor vehicle with a percentage, by weight, of alcohol in their blood of eight one-hundredths or greater, or while under the influence of intoxicating liquor, or marihuana, narcotic drugs, depressants, or stimulant substances, all as defined in [G. L. c. 94C, § 1,], . . . and so operates a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered, and by any such operation so described causes serious bodily injury, shall be punished . . . ."

[4] General Laws c. 265, § 13 1/2, provides in part: "Whoever commits manslaughter while operating a motor vehicle in violation of [G. L. c. 90, § 24 (1) (a), or G. L. c. 90B, § 8A], shall be punished . . . ."

The defendant filed a motion to suppress the BAC results pursuant to § 24 (1) (e), contending that because he did not give his consent to have his blood tested, his BAC results were not admissible at trial. The judge denied the defendant's motion but reported the following question to the Appeals Court: "Is the Commonwealth required to seek a defendant's consent in order to admit his blood testing results in the prosecution of a G. L. c. 90, § 24L [OUI-SBI] offense?" See Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004). This court granted the defendant's application for direct appellate review, and we now affirm the denial of his motion to suppress.

2. Discussion. "[T]he meaning of a statute must, in the first instance, be sought in language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." Commonwealth v. Dalton, 467 Mass. 555, 557 (2014), quoting Commonwealth v. Boe, 456 Mass. 337, 347 (2010). See Commonwealth v. LeBlanc, 475 Mass. 820, 821 (2016) ("Clear and unambiguous language is conclusive as to legislative intent" [citation omitted]).

Section 24 (1) (e) provides in pertinent part:

"In any prosecution for a violation of paragraph (a), evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, . . . shall be admissible . . . provided, however, that . . . such test or analysis . . . was made with the consent of the defendant . . . ."

Paragraph (a) refers to G. L. c. 90, § 24 (1) (a) (§ 24 [1] [a]), which punishes operating a motor vehicle while under the influence of alcohol or drugs (OUI).[5]  Thus, a defendant's BAC is admissible in a prosecution for OUI under § 24 (1) (a) only if the test had been performed with the defendant's permission.  See Commonwealth v. Moreau, 490 Mass. 387, 392-393 (2022); Commonwealth v. Bohigian, 486 Mass. 209, 211 (2020).  Despite this unambiguous language, the defendant contends that, read as a whole, § 24 (1) (e) applies not only to simple OUI, but also to the aggravated OUI-related offenses with which he has been charged.[6]

---

[5] General Laws c. 90, § 24 (1) (a), states in relevant part:

"Whoever, upon any way or in any place to which the public has a right of access . . . operates a motor vehicle with a percentage, by weight, of alcohol in their blood of eight one-hundredths or greater, or while under the influence of intoxicating liquor, or of marijuana, narcotic drugs, depressants or stimulant substances . . . shall be punished . . . ."

[6] Although § 24 (1) (a) is the only offense mentioned in § 24 (1) (e), the defendant posits that the phrase "[i]n any prosecution for a violation of paragraph (a)" is "shorthand" for all types of OUI offenses.  This reasoning ignores the most basic canon of statutory construction:  words in a statute are presumed to mean what they say.  See Commonwealth v. Young, 453 Mass. 707, 713 (2009).  Moreover, the Legislature has amended various provisions of § 24, including § 24 (1) (e) after the enactment of § 24L (OUI-SBI), as recently as 2020.  See, e.g., St. 2005, c. 122, § 9 (added cross references of §§ 24G and 24L, and G. L. c. 265, § 13 1/2, to § 24 [1] [f] [1]); St. 2002, c. 52, § 2.  It readily is apparent, then, that the Legislature could have amended the consent requirement of § 24 (1) (e) to apply to aggravated OUI offenses had it wished to do so.

As support for this interpretation, the defendant reasons that because simple OUI is a lesser included offense of both OUI-SBI and manslaughter-OUI, prosecution of the more serious offenses necessarily includes the prosecution of the lesser included offense.  This reading ignores the plain language of § 24 (1) (e), which clearly limits its application to prosecutions for violations of § 24 (1) (a).  Had the Legislature wanted § 24 (1) (e) to apply to every offense that includes the elements of § 24 (1) (a), it could have done so.  See, e.g., G. L. c. 276, § 58A (1) ("The commonwealth may move, based on dangerousness, for an order of pretrial detention or release on conditions for a felony offense that has as an element of the offense the use, attempted use or threatened use of physical force against the person of another . . ." [emphasis added]).  There is a difference between being charged with simple OUI and being charged with an aggravated OUI offense, including that § 24 (1) (e) applies to the former but not the latter.

Nor does a plain language interpretation of § 24 (1) (e) lead to absurd results.  Given the Legislature's interest in reducing serious injury and loss of life due to impaired driving, it is well within the purview of the Legislature to treat simple OUI and aggravated OUI offenses differently,

including with regard to the admissibility of evidence.[7] See Commonwealth v. Russ R., 433 Mass. 515, 523 (2001), quoting Commonwealth v. Leno, 415 Mass. 835, 841 (1993). See also Moreau, 490 Mass. at 395 ("it is for the Legislature to weigh the benefits and drawbacks of the statutory scheme"). The defendant's remaining arguments similarly do not persuade us to ignore the plain language of § 24 (1) (e).

3. Conclusion. The language of G. L. c. 90, § 24 (1) (e), requiring consent for blood test results to be admissible is clear and unambiguous in its specific reference to violations of § 24 (1) (a). As the consent provision of § 24 (1) (e) does not reference violations under any other section or chapter, including G. L. c. 265, § 13 1/2, or G. L. c. 90, § 24L, the denial of the defendant's motion to suppress is affirmed.

So ordered.

---

[7] The preamble of the bill that introduced § 24L noted that the purpose of the law was to "preserv[e] . . . public safety" and "avoid loss of life." 2003 House Doc. No. 3929. Similarly, the preamble of the equivalent act that introduced G. L. c. 265, § 13 1/2, stated that its purpose was "to increase penalties for drunk drivers in the Commonwealth . . . necessary for the immediate preservation of the public safety." 2005 House Doc. No. 4403.